Ronald Paul ADAMS et al., Plaintiffs,

United States of America,
Plaintiff-Intervenor,

v.

Nathan MATHIS et al., Defendants.

Civ. A. No. 74–70–S.

United States District Court,
M. D. Alabama, S. D.

Feb. 28, 1978.

---

Joel M. Nomberg, Daleville, Ala., for plaintiffs.

Ira DeMent, while he was U. S. Atty. for M. D. Ala., Montgomery, Ala., his successor in office, Barry E. Teague, U. S. Atty., and Stephen A. Whinston, Civil Rights Division, Dept. of Justice, Washington, D. C., for United States.

Jere C. Segrest, Hardwick, Hause & Segrest, Dothan, Ala., for the Chairman and Members of the Houston County Board of Commissioners and Houston County Sheriff A. B. Clark.

William J. Baxley, Atty. Gen., Montgomery, Ala., Larry R. Newman, Asst. Atty. Gen., Birmingham, Ala., Robert S. Lamar, Jr., Sp. Asst. Atty. Gen., Ball, Ball, Duke & Matthews, and Tom Radney, Sp. Asst. Atty. Gen., Radney, Radney & Barnes, Alexander City, Ala., for Alabama Board of Corrections and its members.

Judson C. Locke, Jr., William J. Baxley, Atty. Gen., and James T. Pons, Sp. Asst. Atty. Gen., Montgomery, Ala., for state and county public health officials.

William J. Baxley, Atty. Gen., and Charles H. Barnes, Asst. Atty. Gen., Montgomery, Ala., for the State Fire Marshal.

## MEMORANDUM OPINION

JOHNSON, Chief Judge.

Plaintiff Ronald Paul Adams commenced this action by filing a complaint in this Court on November 18, 1974. The petitioner asked that the Court treat his complaint as a class action by all incarcerated in the Houston County Jail and sought an injunction prohibiting alleged constitutional deprivations, including overcrowding, poor sanitation, and inadequate diet and medical care. The United States became involved when the Court appointed the United States Attorney for this district as amicus curiae. This order was entered on the basis of allegations in the complaint concerning interference with the mail to and from the District Court and also on the basis of a contract between the United States and Houston County to house federal prisoners in the Houston County Jail. In March, 1975, the United States moved to intervene in the action and also filed a complaint in intervention.[1] The claim for intervention was grounded in the First, Sixth, Eighth, and Fourteenth Amendments to the Constitution; jurisdiction was based upon 28 U.S.C. §§ 1343, 1345, 2201 and on the constitutional amendments cited.

The complaint in intervention alleged constitutional deprivations in the operation of the jail, including the failure to protect the inmates from harm, insufficient staffing and classification, overcrowding, poor sanitation, failure to supply personal hygiene items, inadequate visitation policies, inadequate recreation and inadequate medical care and diet.

In March, 1975, the Court granted the motion to intervene and in July, 1976, the

---

1. As intervenor, the United States sought to expand the suit to include as parties all inmates in all county and municipal jails in the state and all officials responsible in their official ca-

pacities for the operation of these jails. However, the Court subsequently dismissed all parties having no connection with the claims as they relate to the Houston County Jail.

Court certified a class of plaintiffs consisting of all inmates of the Houston County Jail at any time since the suit was filed as well as all future inmates to be confined in said jail. The defendants include:

1. Nathan Mathis, Chairman; W. G. Bond, H. E. "Pat" Raley and Charles Whiddon, Members of the Houston County Commission;

2. A. B. Clark, Sheriff, Houston County, Alabama;

3. Joseph B. Stapleton, Houston County Health Officer, and William Hanson, President, Houston County Board of Health;

4. Alabama Board of Corrections and John E. Vickers, Thomas F. Staton, Marion L. Carroll, Jr., W. F. Hamner, and J. Louis Wilkinson, members;

5. Judson C. Locke, Jr., Commissioner, Alabama Board of Corrections;

6. Alabama State Committee of Public Health, Leon C. Hamrick, Chairman; Carl A. Grote, Jr., Vice Chairman;

7. Ira L. Myers, State Health Officer; and

8. Roy L. Thornell, State Fire Marshal.

On the morning the scheduled trial of the case was to begin, February 21, 1977, plaintiffs, plaintiff-intervenor, and defendants Houston County Commissioners and Sheriff A. B. Clark executed and submitted to the Court a partial consent decree. Said defendants admitted to extensive violations of the constitutional rights of persons incarcerated in the jail and agreed to take various remedial measures. However, the remaining defendants refused to stipulate to the provisions of the partial consent decree and trial was held as to the named plaintiffs and the remaining defendants. The case as to the remaining defendants is now submitted upon the issues made up by the pleadings, the evidence submitted in support of and in opposition to the contentions as made by the plaintiffs and plaintiff-intervenor, and the briefs and arguments of the parties.

**FINDINGS**

Upon this submission, this Court in this memorandum opinion makes the appropriate findings of fact and conclusions of law.

The Houston County Jail is a three-story structure located in Dothan, Alabama. In the basement of the jail are offices used by employees of the Sheriff's Department. The first floor consists of offices used by jail personnel for carrying out their various duties. The second floor of the jail includes the kitchen, cells used for housing females, juveniles, and trusties. The third floor of the jail includes two cell blocks known as Northside and Southside. Each block consists of four cells containing eight bunks each and a dayroom. Four smaller "security cells" are also located on the third floor. The jail has a designed capacity of 82.

At the trial, counsel for the Board of Corrections stipulated that the jail had been seriously overcrowded in the past. On some occasions, the population of the jail had exceeded 120 inmates. Because of the lack of space, inmates had been forced to sleep on the floor of the dayroom on the third floor and on the floors of the cells on the second floor.[2] In August, 1976, the State Committee of Public Health, taking note of the overcrowded conditions in the Houston County Jail declared the resulting unsanitary conditions a "health hazard to the jail population, including inmates, detainees, employees, tradesmen and visitors, and, thus, a public health nuisance." The Court finds from the evidence submitted that the designed capacity of 82 does not provide adequate living space for inmates incarcerated in the jail. The overcrowded conditions overtax the plumbing and sanitary facilities, increasing the hazards to health. In addition, forcing inmates to live in too close proximity to other inmates is psychologically debilitating and leads to an increase in tension and problems. This overcrowding also poses a protection problem. The evidence further reflects that there is no classification of persons received at the

2. The June, 1975, inspection report by the County Health Officer reflected that the jail was overcrowded at that time with up to 120 inmates housed in facilities built for 84.

jail for housing purposes. Jail personnel assign inmates to housing areas on the basis of available beds. Persons awaiting trial are housed with sentenced inmates. Female inmates are normally housed on the second floor of the jail, and male inmates are sometimes also housed on this floor. Occasionally, female inmates are also housed on the third floor. The male inmates have access to all areas of the second floor and look into the female cells and occasionally abuse and harass the female inmates. Evidence is clear that the jail staff was and continues to be insufficient in number to perform all of its duties which include supervising the inmates, assisting in the service of meals, supervising the cleaning of the jail, booking and fingerprinting, and evaluating inmates' medical complaints. There are no guards stationed fulltime on the third floor of the jail. One deputy is responsible for both the second and third floors. Matrons are not on fulltime duty. Fighting frequently occurs between inmates in the jail, and evidence reflects inmates have been injured and sexually attacked.

Evidence further reflects that jail deputies have occasionally brought alcoholic beverages to the inmates. Additionally, bail bondsmen have brought alcoholic beverages to inmates in the jail. The evidence further reflects that jail deputies and auxiliary deputies have permitted inmates to engage in sexual activity with female inmates in the jail. Further, jail officials have upon occasion engaged in sexual activity with female inmates at the jail. One inmate became pregnant and subsequently received an abortion.

Persons arrested and brought to the jail do not receive any type of medical evaluation. There are no health professionals who are in attendance or who visit the jail. Sick call is conducted by medically untrained jailers or matrons. The staff at the jail evaluates any medical complaints that are made and determines whether the inmate is to be taken to the doctor. There is no written routine or emergency medical pro-

gram in effect at the jail. There are no inmate medical records except for a log indicating that medication has been dispensed. The type of medication is not identified in this log. Occasionally, seriously ill inmates have been housed at the jail. The minimum elements of an adequate medical care program for inmates of the Houston County Jail are totally lacking.

There has been a total failure of maintenance and cleaning at the Houston County Jail. The grossly unsanitary conditions which were shown by the evidence to exist have continued throughout the time of this litigation and up to and including the trial time. As reflected earlier, the jail was declared a public health nuisance in August, 1976.

Meals are served to jail inmates three times a day. Menus are prepared by the jailer or by the inmate cooks and are based upon what stores are available at the jail at that time. Meals are prepared at the jail by the inmates and there is no supervision by or consultation with the dietician or nutritionist. The meals at the Houston County Jail are repetitive and nutritionally inadequate.

There is no recreation for inmates of the jail. The jail's policy with respect to recreation has adverse psychological ramifications on inmates. As a matter of fact, the opportunities for recreation at the jail are more restrictive than at the state's prisons.

The State Board of Corrections, through its designated agents, inspects the Houston County Jail semi-annually pursuant to Alabama Code, § 14–6–81. There are a total of three individuals employed by the Corrections defendants to inspect jails throughout the State of Alabama.[3] Needless to say, this is an insufficient number to adequately perform the assigned task. The inspection reports that were offered in evidence in this case reflect generally that the jail interior is dilapidated, that there are no emergency plans, that there are no medical records available, that there is no daily sick call, that there is no pre-service or in-service

3. There is one less inspector now than there was in 1917.

training for jail guards, that recreational programs for inmates are limited to a radio, television and books, that there is no admission medical examination, that there are no regular medical services, and that there is no special handling of pre-trial as opposed to post-trial inmates. It is the practice of the State Correction defendants not to require jail officials to correct deficiencies as reflected by the inspection reports. This policy has been followed with respect to the Houston County Jail.

Pursuant to Alabama Code, § 14–6–86, the State Board of Corrections promulgated and established "rules and regulations governing county and city jails" on April 20, 1967. These rules and regulations relate to minimum receiving procedures, minimum intake procedures, adequate supervision by paid personnel, the indiscriminate use of prisoners as trusties, the preparation of food under the supervision of a jail staff person experienced in food service, cleanliness, sanitation and safety, medical and health services, separation of female prisoners, and fulltime matron services. However, the State Board of Corrections has taken no action to implement the policies set forth in its rules and regulations. Even though the Alabama Code, § 14–6–81, requires the defendant Alabama Board of Corrections to "aid in securing the just, humane and economic management" of the Houston County Jail, the Board and its commissioner have failed to perform this duty.

Under state statutes it has been the duty of the Houston County Health Officer to inspect the Houston County Jail since the early 1900's. It has been the policy of the State and County Health Departments to perform the jail inspection under the aegis of the State Health Department. The current statutory framework places responsibility on the county health officials to inspect the Houston County Jail.[4] Evidence reflects that the Houston County Health officials have rendered no assistance in providing health care to the inmates of the Houston County Jail.

The State Fire Marshal, through his agents, inspects the Houston County Jail pursuant to Alabama Code, §§ 36–19–1, 36–19–4 and 36–19–11. In June, 1975, the Dothan Fire Marshal, as agent of the State Fire Marshal, inspected the jail and made the following findings: dangerous electric wirings; loose light fixtures; improper storage of combustibles; no fire extinguishers in the housing areas or in the kitchen; stove and deep-fat fryer in need of thorough cleaning. These reports reflect that these conditions existed prior to May, 1975, and no corrective action was instituted until December, 1976. Neither the State Fire Marshal nor his agents took any action to correct these deficiencies. In November, 1976, there was a serious fire at the jail in which two female juveniles were burned; one seriously. In contrast to other public buildings, the fire marshal has set no maximum capacity for the jail. The fire marshal has the authority to promulgate rules and regulations with respect to fire safety in the jail. Alabama Code, § 36–19–9. The

---

4. Pursuant to Rule 18 of the Alabama Rules of Appellate Procedure, this Court certified a question of law to the Supreme Court of Alabama inquiring if the Alabama Committee of Public Health and/or the State Health Officer had a duty under the law of Alabama to inspect the Houston County Jail or to correct or abate unsanitary conditions and, if not, who were the proper state authorities to correct or abate any unsanitary or unhealthy conditions found to exist in the Houston County Jail. On September 13, 1977, the Supreme Court of Alabama responded to this certification generally to the effect that the State Health Officer must supervise the County Boards of Health, but that the State Health Officer had no duty to inspect the Houston County Jail or correct or abate unsani- tary conditions that may exist therein. The Supreme Court of Alabama further responded that the Houston County Health Officer and the Houston County Board of Health were the proper authorities to correct or abate any unsanitary conditions in the Houston County Jail and that the Houston County Commission was the proper authority to ensure that any unsanitary condition existing therein had been abated. Further, the Supreme Court of Alabama opined that, should the above-named county officials fail to act, then the Department of Corrections and Institutions and its Director had the duty and responsibility to act. In view of the response to this Court's certified questions, an order will be entered in this case dismissing the State Health defendants.

Fire Marshal has adopted standard rules and regulations; however, these regulations have not been enforced at the Houston County Jail.

## CONCLUSIONS

Upon consideration of these findings, this Court concludes that it has jurisdiction of this case. 28 U.S.C. §§ 1343, 1345, 2201; U.S.Const. amends. VIII and XIV.

 The Court further concludes that the United States was authorized to intervene in this action pursuant to Rule 24, Federal Rules of Civil Procedure. The government's standing to intervene is supported by its duty to enforce federal criminal statutes generally applicable to the conduct of the defendants proven at trial. Where, as here, such criminal prosecution would not be effective to prevent constitutional violations, this Court may properly infer the existence of derivative civil jurisdiction. *In re Estelle*, 516 F.2d 480 (5th Cir.), *cert. denied, sub nom. Estelle v. Justice*, 426 U.S. 925, 96 S.Ct. 2637, 49 L.Ed.2d 380 (1976).

 The law is clear that prison and jail inmates retain certain rights as citizens. *Jackson v. Godwin*, 400 F.2d 529, 532 (5th Cir. 1968). And although federal courts do not sit to supervise jails and prisons, they are bound to protect inmates from cruel, oppressive treatment which adds punishment to confinement prescribed by the committing courts. Persons incarcerated in jails and prisons are protected by the Eighth and Fourteenth Amendments. *Jackson v. Godwin, supra; Pugh v. Locke*, 406 F.Supp. 318 (M.D.Ala.1976), *aff'd with modifications sub nom. Newman v. Alabama*, 559 F.2d 283, 286 (5th Cir. 1977). No government can, within the bounds of the Constitution, cruelly punish a citizen whether he be in jail or at liberty. On this point the Fifth Circuit in *Newman v. Alabama, supra*, stated:

> The Eighth Amendment to the Constitution of the United States, reinforced by the Fourteenth Amendment, prohibits the imposition of cruel and unusual punishment. It is much too late in the day for states and prison authorities to think that they may withhold from prisoners the basic necessities of life, which include reasonably adequate food, clothing, shelter, sanitation, and necessary medical attention, *Gates v. Collier*, 5 Cir., 1974, 501 F.2d 1291; *Newman v. Alabama*, 5 Cir., 1974, 503 F.2d 1320, *cert. denied*, 421 U.S. 948, 95 S.Ct. 1680, 44 L.Ed.2d 102; *Williams v. Edwards*, 5 Cir., 1977, 547 F.2d 1206.

 The failure to provide an inmate with an environment that does not impair his physical and mental health violates the Due Process Clause of the Fourteenth Amendment. With respect to untried persons, such treatment is punitive and violates their Fourteenth Amendment rights. *Anderson v. Nosser*, 456 F.2d 835 (5th Cir.) (*en banc*), *cert. denied*, 409 U.S. 848, 93 S.Ct. 53, 34 L.Ed.2d 89 (1972).

 Failure to provide adequate living space to convicted persons and failure to provide security while they are incarcerated constitute cruel and unusual punishment. *Pugh v. Locke, supra; Gates v. Collier, supra*. When a state or county takes a citizen into custody, the state assumes the responsibility for that individual's physical and mental health. *Newman v. State of Alabama*, 349 F.Supp. 278 (M.D.Ala.1972), *affirmed in part* 503 F.2d 1320 (5th Cir. 1974), *cert. denied*, 421 U.S. 948, 95 S.Ct. 1680, 44 L.Ed.2d 102 (1975).

 The failure to properly prepare and serve nutritionally adequate food to inmates who, due to their confinement, are unable to seek alternative sources of nutrition constitutes a violation of the inmates' Eighth and Fourteenth Amendment rights. *Taylor v. Sterrett*, 344 F.Supp. 411 (N.D. Tex.1972), *affirmed in part*, 499 F.2d 367 (5th Cir. 1974).

 The failure to provide opportunities for outdoor recreation constitutes an unnecessary restriction on pre-trial detainees and on post-trial detainees. Consequently, the lack of adequate outdoor recreation is a violation of both the Due Process and Equal

Protection Clauses in the Fourteenth Amendment. *Rhem v. Malcolm*, 507 F.2d 333 (2d Cir. 1974); *Pugh v. Locke, supra.*

 The State of Alabama, through the State Board of Corrections, through the county health officials and through the State Fire Marshal, has a duty mandated by the Fourteenth Amendment to the Constitution of the United States to ensure that those persons incarcerated by virtue of its laws in the Houston County Jail are not deprived of their constitutional rights. *Pugh v. Locke, supra.* The appropriate state officials have the duty of supervising the acts of its agents who are authorized by state law to operate a jail in one of its political subdivisions. This constitutional duty to supervise includes three basic elements: To clearly and specifically define the scope of the authority delegated through the promulgation of detailed rules and regulations; to keep informed as to the conduct of the agents through regular and thorough inspections; and to take all action necessary to correct the conduct of the agents operating the jails in the political subdivisions, through vigorous enforcement of the established standards and through direct assistance. *See Lee v. Macon County Board of Education*, 267 F.Supp. 458 (M.D. Ala.) (three-judge court), *affirmed sub nom. Wallace v. United States*, 389 U.S. 215, 88 S.Ct. 415, 19 L.Ed.2d 422 (1967); *Washington v. Lee*, 263 F.Supp. 327 (M.D.Ala. 1966) (three-judge court), *affirmed*, 390 U.S. 333, 88 S.Ct. 994, 19 L.Ed.2d 1212 (1968).

 The State defendants, State Board of Corrections and the State Fire Marshal have failed to perform their constitutional duties in not taking the action necessary to correct the conditions in and the illegal operations of the Houston County Jail and have instead remained passive in the face of continuing unconstitutional conditions in this jail. The county health defendants have failed to promulgate regulations concerning the Houston County Jail as required by law. Alabama Code § 22–3–2.

The county health defendants have failed to thoroughly inspect the Houston County Jail and report thereon and failed to act to ameliorate substandard conditions as required by law. The failure has contributed to the constitutional deprivations suffered by members of plaintiffs' class.

The State Fire Marshal has failed to promulgate regulations concerning important fire safety measures needed at the Houston County Jail as required by law. The State Fire Marshal has failed to carefully and thoroughly inspect the Houston County Jail and report thereon and failed to act to correct unsafe conditions known to exist there. This failure on the part of the State Fire Marshal has contributed to the constitutional deprivations suffered by the members of plaintiffs' class.

 At the request of the inmates that initiated this litigation, this Court in July, 1976, appointed the Honorable Joel Nomberg as attorney for the class plaintiffs. Attorney Nomberg has presented to the Court his application for the award of an attorney's fee pursuant to 42 U.S.C. § 1988. This Court has reviewed the application for attorney's fee as amended and the objections thereto and has determined that Attorney Nomberg is entitled to the award of a reasonable fee for representing class plaintiffs in this case. Upon consideration of the application for attorney's fee, the objections made thereto, and this Court's observation as to the professional conduct of Mr. Nomberg in representing the class plaintiffs in this case, and pursuant to the criteria set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974), this Court finds that Attorney Nomberg is entitled to be compensated at the rate of $50 per hour for 200 hours of work actually expended in this case.[5] This Court further finds that 50 percent of this attorney's fee is to be assessed against the county defendants who stipulated to an injunction and the remaining 50 percent to be assessed against the State Board of Corrections and the State Fire Marshal.

An order will be entered accordingly.

---

5. Mr. Nomberg's application reflects that he spent considerably more time than 200 hours. However, the Court finds that 200 hours is a reasonable time to have spent on this case.