Isiah LaBrent SANFORD

v.

Sheriff Bob BROOKSHIRE, Ector County, Texas, Rocky Bright, Claudia Bretz, and James Haywood.

MO–93–CA–104.

United States District Court,
W.D. Texas,
Midland–Odessa Division.

June 24, 1994.

Isiah LaBrent Sanford, Odessa, TX, pro se.

Denis C. Dennis, McMahon, Tidwell, Hansen, Atkins & Peacock, P.C., Odessa, TX, for defendants.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW PURSUANT TO RULE 52 F.R.CIV.P.

GUIROLA, United States Magistrate Judge.

In this 42 U.S.C. § 1983 case, Plaintiff, ISIAH LABRENT SANFORD, seeks damages based upon his claim that the defendants denied him his Eighth Amendment right to be free from cruel and unusual punishment by confining him to a filth-encrusted solitary cell without functional plumbing or hygienic supplies for six days. The parties having previously consented to the exercise of jurisdiction by the U.S. Magistrate Judge pursuant to 28 U.S.C. § 636(c), a non-jury trial was held on June 20, 1994. Pursuant to Rule 52(a) of the Federal Rules of Civil Procedure the Court finds as follows:

### FACTS

On April 8, 1993 ISIAH LABRENT SANFORD, an inmate at the Ector County Jail, became agitated and unruly. Citing reasons of jail security, supervisory jailer CLAUDIA BRETZ, ordered jailer JAMES HAYWOOD to remove SANFORD from the general population and place him in administrative segregation. Upon his arrival in single-cell 2J2, SANFORD found that the toilet seat was encrusted with scum and the toilet did not flush. The faucet in the sink did not operate. The shower stall was filthy, the curtain smeared with excrement and only a thin, cold stream of water ran from the shower head. SANFORD testified that immediately upon discovering that the toilet did not flush and that only a thin stream of cold water came from the shower head, he called BRETZ over the intercom to notify her. SANFORD made another call to BRETZ that night when he needed to use the toilet. BRETZ told SANFORD there were no other cells open, so she could not move him. SANFORD was forced to defecate in the floor of the shower, hoping that the small amount of running water would wash away the feces. However, the water was not sufficient to accomplish that task. SANFORD was provided with no toilet paper and had to tear two tee-shirts into strips to clean himself.

According to SANFORD, he wrote four or five grievances and complained verbally to jail officials about the lack of plumbing and toilet facilities in his cell. There is a conflict in the testimony regarding when jail officials received notice of condition of cell 2J2. BRETZ testified that she was not made aware of any problem with the toilet on April 8, 1993. Although BRETZ could not recall the exact day, she did state that at some point SANFORD did tell her that the toilet in his cell did not flush. She responded by executing a written maintenance request

form.[1] BRETZ made no other effort either to remove SANFORD from cell 2J2 or to provide an alternative means whereby SANFORD could use a functioning toilet. BRETZ's supervisor, ROCKY BRIGHT was aware of SANFORD's situation and spoke with him over the intercom when SANFORD requested cleaning supplies. BRIGHT told SANFORD he would get cleaning supplies on cleaning day.

During his six days of confinement in cell 2J2, SANFORD was repeatedly forced to use the shower floor as a receptacle for his body waste. Cleaning supplies were never provided. In the midst of what SANFORD described as a stifling odor, he was forced to sleep and eat his meals. The toilet was eventually repaired, but only after SANFORD was removed from cell 2J2 on April 13, 1993.

### DISCUSSION

The Eighth Amendment to the United States Constitution prohibits any punishment which violates civilized standards and concepts of humanity and decency. *Estelle v. Gamble*, 429 U.S. 97, 102–03, 97 S.Ct. 285, 290, 50 L.Ed.2d 251 (1976). There is no static test by which courts determine whether conditions of confinement are cruel and unusual. Rather, what constitutes cruel and unusual punishment is measured by the evolving standards of decency which mark the progress of a maturing society. *Rhodes v. Chapman*, 452 U.S. 337, 346, 101 S.Ct. 2392, 2399, 69 L.Ed.2d 59 (1981).

Deficiencies and inadequacies in prison conditions do not necessarily violate the Eighth Amendment. The amendment is violated only when an inmate is deprived of "the minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347, 101 S.Ct. at 2399. Although inmates are, undeniably, sent to prison as punishment, the prison environment itself may not be so brutal or unhealthy as to be in itself a punishment. *Bell v. Wolfish*, 441 U.S. 520, 539, 99 S.Ct. 1861, 1874, 60 L.Ed.2d 447 (1979).

The Supreme Court has clarified the standard for Eighth Amendment violations suffered during imprisonment in *Wilson v. Seiter*, 501 U.S. 294, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991). The court held that an inmate must prove both an objective element—that the deprivation was sufficiently serious,[2] and a subjective element—that a prison official acted with a sufficiently culpable state of mind. The court articulated that the requisite state of mind for an Eighth Amendment violation concerning a prisoner's conditions of confinement is deliberate indifference.[3]

In *Daigre v. Maggio*, 719 F.2d 1310 (5th Cir.1983), the Fifth Circuit stated:

We concluded over a decade ago that the eighth amendment forbids deprivation of the basic elements of hygiene. *Novak v. Beto*, 453 F.2d 661, 665 (5th Cir.1971). We observed this 'common thread' woven through judicial condemnations of prison conditions, noting in most of the prior cases the deprivation of facilities for elementary sanitation.[4]

Cases decided after *Novak* have also observed the fundamental principle that prison authorities may not withhold from prisoners the basic necessities of life, which includes reasonably adequate sanitation.[5]

1. *See* Defense Exhibit 4, Incident report filed by Claudia Bretz.

2. In determining whether a deprivation was sufficiently serious, a court must look at the totality of the conditions affecting an inmate.

3. *Wilson*, 501 U.S. at 298–306, 111 S.Ct. at 2324–27.

4. *See, e.g. Wright v. McMann*, 387 F.2d 519 (2nd Cir.1967) (cell encrusted with excrement, plaintiff entirely naked, forced to sleep on concrete floor, no soap, towel or toilet paper); *Hancock v. Avery*, 301 F.Supp. 786 (M.D.Tenn.1969) (hole for waste, flushed irregularly by guard, no soap, towel or toilet paper, prisoner slept naked on floor); *Jordan v. Fitzharris*, 257 F.Supp. 674 (N.D.Cal.1966) (cells not cleaned regularly, prisoner had no means to clean himself, a hole for receiving body wastes, no flushing mechanism).

5. *See Adams v. Mathis*, 458 F.Supp. 302 (M.D.Alabama 1978); *Toussaint v. McCarthy*, 597 F.Supp. 1388 (N.D.Cal.1984) (leaking pipes and fixtures, clogged drains, rotting sewer lines, other plumbing and sewage deficiencies); *Young v. Quinlan*, 960 F.2d 351 (3rd Cir.1992) (inmate not allowed out of "dry cell" more than once to defecate or urinate over a period of several days, plastic urinal not provided for 29 hours, inmate not allowed to empty urinal more than twice, no toilet paper).

*Liability*

█ If "[i]t would be an abomination of the Constitution to force a prisoner to live in his own excrement for four days",[6] then certainly SANFORD's six-day ordeal was a "serious deprivation of basic human needs"[7] in violation of the Eighth Amendment. That Ector County Jail officials were deliberately indifferent to SANFORD's requests for a minimal amount of relief from his squalor is clear from the record. According to SANFORD's testimony, he gave immediate and continuing notice of the condition of his cell to BRETZ. In addition, he requested cleaning supplies from BRIGHT. Even if BRETZ's version of events was accepted by the Court, she admittedly received notice that the toilet was not working in 2J2 a few days into SANFORD's segregation. In fact, trial testimony disclosed that a non-flushing toilet is considered an emergency by Ector County jail officials, warranting a phone call to the maintenance department and immediate repairs. Once notified that SANFORD was not able to dispose of feces in a sanitary manner, BRETZ was required to remedy the unconstitutional condition of SANFORD's confinement. Leaving SANFORD in the cell while a written maintenance request finds its way to the maintenance department is an inadequate response, tantamount to deliberate indifference.

Similarly, BRIGHT spoke with SANFORD over the intercom when SANFORD requested supplies to clean his cell. Although BRIGHT testified that he immediately sent an unidentified officer with a mop bucket to cell 2J2, under cross-examination BRIGHT conceded that he may actually have told SANFORD that cleaning supplies would be given to him on cleaning day.

It is the Court's opinion that SANFORD has proven by a preponderance of the evidence that BRETZ and BRIGHT were aware of his confinement to a filthy, non-functioning cell and failed or refused to take actions to relieve SANFORD's medieval conditions of confinement.

*Damages*

█ Having determined that SANFORD's Eighth Amendment rights were violated, the Court must assess damages. SANFORD failed to present any evidence of actual damages. However, even when a violation of a civil right causes no actual injury to the plaintiff, he is entitled to recover nominal damages, not to exceed one dollar. *Carey v. Piphus,* 435 U.S. 247, 266–67, 98 S.Ct. 1042, 1054, 55 L.Ed.2d 252 (1978); *Farrar v. Cain,* 756 F.2d 1148 (5th Cir.1985). Accordingly, the Court finds that SANFORD is entitled to nominal damages in the amount of one (1) dollar from BRETZ and BRIGHT.

Judgment is rendered in favor of plaintiff ISIAH LABRENT SANFORD against defendants CLAUDIA BRETZ and ROCKY BRIGHT. Plaintiff is awarded one (1) dollar in nominal damages as against Defendants CLAUDIA BRETZ and ROCKY BRIGHT.

*Remaining Defendants*

█ Plaintiff introduced no evidence from which the Court could conclude that BRETZ and BRIGHT were following a policy or custom of ECTOR COUNTY when they violated SANFORD's Eighth Amendment rights,[8] or that Sheriff O.A. (BOB) BROOKSHIRE had any personal knowledge or involvement in the incident.[9] Furthermore, HAYWOOD's involvement was limited to escorting SANFORD to cell 2J2. There was no showing that HAYWOOD was aware of or responsible for SANFORD's conditions of confinement in cell 2J2. The Motion of defendants ECTOR COUNTY, TEXAS, BROOKSHIRE and JAMES HAYWOOD for Judgment as a Matter of Law pursuant to Rule 52, F.R.C.P. should therefore be granted.

The Clerk of the Court is instructed to prepare a Judgment Upon a Decision By the

---

6. *Young v. Quinlan,* 960 F.2d 351, 365 (3rd Cir. 1992).

7. *Rhodes,* 452 U.S. at 347, 101 S.Ct. at 2399.

8. *See Monell v. Dept. of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

9. Under § 1983 vicarious liability may not be imposed on a sheriff for the acts or omissions of his employees. *Irby v. Sullivan,* 737 F.2d 1418 (5th Cir.1984); *Lozano v. Smith,* 718 F.2d 756 (5th Cir.1983).

Court pursuant to Rule 58 F.R.Civ.P. consistent with these findings of facts and conclusions of law.

**SO ORDERED AND ADJUDGED.**