Eugene STEWART, et al.,
Plaintiffs-Appellants,

v.

William WINTER, Individually and in his official capacity as Governor of the State of Mississippi, et al., Defendants-Appellees.

No. 80–3899.

United States Court of Appeals, Fifth Circuit.

March 5, 1982.

Yvonne L. Hughes, Cleveland, Miss., Bruce Johnson, Lexington, Miss., for plaintiffs-appellants.

R. Lloyd Arnold, Sp. Asst. Atty. Gen., P. Roger Googe, Jr., Asst. Atty. Gen., Jackson, Miss., Hugh R. Varnado, Jr., Belzoni, Miss., for defendants-appellees.

Before COLEMAN, REAVLEY and SAM D. JOHNSON, Circuit Judges.

REAVLEY, Circuit Judge:

Plaintiffs, 18 past or present inmates in county jails in Mississippi, brought this action against various Mississippi state and county officials. They sought to represent a class of all persons who have been or will be incarcerated in the county jails of any of the 82 counties in Mississippi against a class of defendants including all state and county officials in any way responsible for maintaining or overseeing the conditions in the jails. After granting defendants' motion to stay discovery pending resolution of the class certification issues, the district court denied certification of both the plaintiff and defendant classes, and it dismissed this action without prejudice. 87 F.R.D. 760 (N.D.Miss.1980). The central question on appeal is whether the district court erred

in denying certification to the plaintiff class and thereby refusing to adjudicate in the one suit the constitutional problems and remedies for every county jail in the State of Mississippi. While we conclude that several of the grounds the district court relied on in denying class certification were erroneous, we hold that the court did not abuse its discretion in refusing to certify the plaintiff class.

## I. Background

### A. The County Jails

Mississippi law requires each county to erect and maintain a jail at its own expense. Miss.Code Ann. § 19–3–41 (1972); see id. § 19–9–11 (renovation or erection of new jail); id. §§ 19–9–1, –93 (methods of funding). The county must also feed, clothe, and care for its inmates at county expense. Id. §§ 47–1–47, –57. The county jails have generally been used to house pretrial detainees and convicts whose sentences are not more than one year ("county inmates").[1] In 1977, however, Mississippi enacted a law which authorizes the state department of corrections to place "[a]ny person ... placed under [its] custody" (any "state prisoner") in a county jail until space becomes available in the penitentiary. Miss.Code Ann. § 47–5–112(1). This provision was passed as a result of the limitations imposed in Gates v. Collier, 423 F.Supp. 732 (N.D.Miss.1976), aff'd, 548 F.2d 1241 (5th Cir. 1977), on the number of inmates that may be incarcerated in the state penitentiary.

### B. Procedural History

On or prior to June 9, 1980, the date this suit was filed, plaintiffs were state prisoners, pretrial detainees, and county inmates of eight county jails.[2] Plaintiffs' primary contention is that the conditions in the county jails constitute cruel and unusual punishment prohibited by the Eighth Amendment. They also allege that the conditions violate the First Amendment and the equal protection and substantive due process guarantees of the Fourteenth Amendment. Finally, they claim that summary discipline administered in the jails violates the procedural due process guarantee of the Fourteenth Amendment. Concerning the conditions of confinement, plaintiffs allege in general terms that many of the jails are in a state of deterioration and are overcrowded; that visiting privileges, classification and diagnosis of inmates, medical care, access to legal materials, staff training, rehabilitation programs, and recreational opportunities are all inadequate; and that the result of these inadequacies is tension and violence among the inmates. Concerning the procedural due process claim, plaintiffs allege that "arbitrary, capricious and unlawful summary discipline" is administered and that no "code of in jail behavior" exists.

---

1. Many of the Mississippi criminal statutes give the sentencing authority the discretion to sentence a convict to imprisonment in either the state penitentiary or the county jail. See, e.g., Miss.Code Ann. § 97–3–87 (1972) (whitecapping) (not more than five years in penitentiary or not more than six months in county jail); id. § 97–5–1 (abandonment of child) (seven years in penitentiary or one year in county jail); id. § 97–9–5 (bribery of jurors) (five years in penitentiary or one year in county jail). Persons actually sentenced to serve time in the state penitentiary are sometimes referred to as "felons," since Mississippi law deems any crime "punished with ... confinement in the penitentiary" a "felony." Miss.Code Ann. § 1–3–11 (1972) (emphasis added). We eschew the terms "felons" and "misdemeanants," however, because it is not clear that Mississippi law defines these terms in any consistent fashion, and because classifying a prisoner as either often depends entirely on whether the sentencing authority has decided to commit a convict to the state penitentiary or to the county jail.

2. The amended complaint names 20 plaintiffs. The district court dismissed two of them; plaintiffs do not appeal these dismissals. Of the remaining 18, ten were incarcerated in Humphreys County, two in Jones County, one in Tallahatchie County, one in Holmes County, one in Lauderdale County, one in Pontotoc County, and one, at different times, in both Clay and Monroe Counties. According to the amended complaint, four of the plaintiffs were state prisoners awaiting transfer to the state penitentiary; another two were pretrial detainees. The amended complaint contains no description of the status of the other 12 plaintiffs; apparently eight were state prisoners, see 87 F.R.D. at 769 (total of 12 state prisoners), and the remaining four were either county inmates or pretrial detainees.

Plaintiffs served with their complaint a motion for certification of the plaintiff class and a request for the production of documents. After the court had granted defendants' motion for additional time to respond to plaintiffs' document request,[3] defendants filed a motion requesting dismissal on various grounds as well as a class certification hearing, and then moved to hold all discovery in abeyance until the court ruled on their motion. Plaintiffs responded with a motion to compel. The court granted the motion to hold discovery in abeyance and denied plaintiffs' motion.

At the certification hearing, the court dismissed two of the eight counties named in this suit on the ground that one county's jail was already operating under court order and the other was the subject of a pending class action instituted by one of the plaintiffs named in this suit. Then, in a written opinion, 87 F.R.D. 760 (N.D.Miss. 1980), the court granted the state defendants' motion to dismiss on the ground that the state officials had no authority over the county jails and thus had no responsibility for their conditions. *Id.* at 768. Treating the remainder of the suit as one against county officials, the court refused to certify the plaintiff class on the grounds, *inter alia*, that (1) the evidence at the certification hearing demonstrated a diversity of conditions among the county jails rather than common questions of law or fact, *id.* at 769, and that (2) the named plaintiffs were not adequate class representatives, *id.* at 770. Finally, the court held that the defendant class did not meet the requirements of Rule 23. *See id.* at 770–71. Having denied class certification, the court dismissed the suit "without prejudice to plaintiffs' right to prosecute individually their claims against the county officials in charge of the jail of any county." *Id.* at 771.

We hold that the district court erred in dismissing the state defendants and in holding that plaintiffs were not adequate representatives on the grounds assigned in its opinion. Nevertheless, we affirm the court's judgment because it did not abuse its discretion in concluding that there were no common questions of law or fact within the meaning of Rule 23(a)(2). We express no opinion on any of the other views expressed in the district court's opinion.

## II. *Denial of Discovery*

■ Whether discovery will be permitted in connection with a motion for a class certification determination "lies within the sound discretion of the trial court." *Kamm v. California City Dev. Corp.*, 509 F.2d 205, 209 (9th Cir. 1975). And, as in all discovery matters, the district court has broad discretion in limiting the scope of discovery. *Pan-Islamic Trade Corp. v. Exxon Corp.*, 632 F.2d 539, 550 (5th Cir. 1980), *cert. denied,* —— U.S. ——, 102 S.Ct. 427, 70 L.Ed.2d 236 (1981). In light of the mandate of Rule 23(c)(1) that a certification determination be made "[a]s soon as practicable after the commencement of [the] action," we think it imperative that the district court be permitted to limit pre-certification discovery to evidence that, in its sound judgment, would be "necessary or helpful"[4] to the certification decision. Our prior decisions make it clear, however, that in most cases "a certain amount of discovery is essential in order to determine the class action issue and the proper scope of a class action." *Pittman v. E. I. duPont de Nemours & Co.*, 552 F.2d 149, 150 (5th Cir. 1977).

■ Plaintiffs' discovery motion asked the court to produce "all the documents requested" in their notice to produce, and on appeal they renew their contention that they were entitled to receive, prior to the certification hearing, all documents within the scope of their document request.[5] We hold that the district court did not abuse its discretion in denying this part of plaintiffs' motion. There were potentially millions of

---

3. Plaintiffs failed to make a timely response to defendants' motion; they served a motion to compel the day after the court had granted defendants' motion for additional time.

4. *Cruz v. Estelle*, 497 F.2d 496, 499 (5th Cir. 1974).

5. Brief for Appellants at 31.

pages of documents within the scope of plaintiffs' 61-paragraph document request, which asks for documents relating to every aspect of life in the jails of Mississippi's 82 counties.[6] While much of this material may have been relevant to the merits of the class claims, very little of it could have been "necessary or helpful" to determining the threshold issues posed by Rule 23(a) and (b). Enforcing plaintiffs' sweeping request would have imposed on defendants one of the major burdens of defending this omnibus class action prior to any determination that the action was maintainable as such. The district court acted within its discretion in denying plaintiffs' motion to compel production of all the documents requested.

It is apparent from the court's order denying the motion, however, that it construed plaintiffs' motion as making an alternative request for production of three identified documents [7]—three "comprehensive reports" on the conditions in Mississippi's county jails, all prepared by the state.[8] Ordinarily so limited a request would have to be allowed. Production of "comprehensive reports" could have been helpful in identifying any common question of law or fact raised by the conditions in the several jails. As will be seen, however, this case is one of those where the decision on certification of the class action can properly be made upon the information afforded by the pleadings. *See Huff v. N. D. Cass Co.*, 485 F.2d 710, 713 (5th Cir. 1973) (en banc).

### III. *Dismissal of the State Defendants*

The district court dismissed the suit against all of the state officials named as defendants on the ground that, under the applicable Mississippi statutes, "the state officials sued by the plaintiffs have no authority over the maintenance, administration or operation of county jails and that no judgment against them could effectuate the relief sought by plaintiffs." 87 F.R.D. at 768. This was not a proper ground for dismissing the state officials.

Several of the named plaintiffs, and thousands of the putative class members, are state prisoners committed to the custody of the Mississippi Board of Corrections. The district court's holding would allow the defendant state officials to relegate their prisoners to "cruel and unusual punishment" so long as they have no power to change the conditions of confinement in county jails. We reject this theory. This court has consistently held that state officials cannot disclaim responsibility for cruel and unusual conditions of confinement of prisoners in their custody on the ground that it is beyond their power to effect the changes necessary to bring the conditions up to minimal standards. *See, e.g., Smith v. Sullivan*, 553 F.2d 373, 378 (5th Cir. 1977) (claim of lack of funds); *Gates v. Collier*, 501 F.2d 1291, 1319–20 (5th Cir. 1974) (claim that state legislature was a necessary party). Even if the district court were correct in deciding that the defendant state officials have no authority to make changes in county jails,[9] the district court could have

---

**6.** Some of the more sweeping requests were not really requests to produce documents at all, but interrogatories asking the defendants to compile various data on the jail population and conditions in the jails.

**7.** This alternative was not suggested on the face of the motion the court denied, nor is it mentioned in plaintiffs' brief on appeal. The alternative was suggested in the previous motion to compel filed by plaintiffs and denied by the court as an untimely response to defendants' initial motion for additional time, *see* note 3 *supra*. Plaintiffs' previous motion was attached as an exhibit to the motion at issue here.

**8.** This description of the subject matter of the three reports is plaintiffs'; it is not disputed by

defendants. One report, entitled *A Local Correctional Survey for the State of Mississippi*, was prepared by the Department of Criminal Justice and the University of Mississippi for the governor's office; the other two reports were prepared by state agencies and submitted to a state senate committee working on legislative proposals to deal with the problems in the county jails. The record in this case does not reveal whether these three reports are available to the public.

**9.** The statutory authority relied on by the district court was clearly inadequate to support its conclusion. It placed primary reliance on a provision in the 1977 statute under which state prisoners may be placed in county jails; but that provision merely states that "[t]his section

ordered the state officials to remove prisoners in their custody from any county jail found constitutionally inadequate, or, in the alternative, offered them the opportunity to assist the county in making the necessary changes in order to continue using the jail to incarcerate state prisoners.

Since issuing its decision in this case, the court below has apparently recognized that state officials cannot shed their constitutional obligations by putting state prisoners in county jails. That court has entered an order in *Gates v. Collier* redefining the *Gates* class to include all "felony offenders committed . . . to the custody of the [state] . . . wherever now housed a[nd] hereafter to be housed within the state," thereby entitling all state prisoners to the relief granted in *Gates*.[10] *Gates v. Collier*, No. GC 71–6–K (N.D.Miss. May 20, 1981).

Although we hold that the dismissal of the state defendants was error, we do not think that this conclusion requires reversal of the district court's order denying certification, because we do not believe that the presence or absence of the state defendants has any relevance to the ground on which we uphold that denial. To that order we now turn.

## IV. *Refusal to Certify the Plaintiff Class*

The district court refused to certify the plaintiff class on the grounds that the plaintiffs were inadequate representatives and that there were no common questions of law or fact. While we reject the district court's reasoning on the first ground, we affirm its order on the second.

### A. *Adequacy of Representation*

The district court first ruled that the 12 state prisoners were not adequate representatives under Rule 23(a)(4) because eight of them had already been transferred from county jails to the state penitentiary and four others were subject to such transfer in the future. 87 F.R.D. at 769–70. It then concluded that none of the plaintiffs were adequate representatives because "there [was] no assurance" that they would be as interested in seeking injunctive relief as in pressing their personal claims for large damages.[11] The court reasoned that "[t]his potential antagonism could be alleviated only by creating a subclass of persons formerly incarcerated and seeking money damages," *id.* at 770; this subclass, according to the district court, could be certified only under Rule 23(b)(3), whose requirements were clearly not met.

The court erred in concluding that the prospect of future transfer or release makes a prisoner an inadequate class representative. If its conclusion were correct, then no prisoner in the county jails—where sentences are invariably a year or less—

does not *create* in the department of corrections . . . any *new* liability . . . nor shall it *create* in the department . . . any administrative authority or responsibility for the construction, funding, administration or operation of county . . . jails." Miss.Code Ann. § 47–5–112(4) (emphasis added). Whether such responsibility exists by virtue of the relationship between Mississippi state and county governments, or by virtue of the Eighth Amendment, is not addressed by the 1977 statute, nor is it adequately addressed by the district court's opinion or the briefs in this court. Accordingly, we have no occasion in this case to delineate the precise extent of the state's responsibility for conditions in the county jails. *See generally Jones v. Diamond*, 594 F.2d 997, 1006–08 (5th Cir. 1979) (describing the intricate statutory scheme regulating the county jails), *vacated en banc*, 636 F.2d 1364 (5th Cir. 1981); *State v. McPhail*, 182 Miss. 360, 180 So. 387, 390 (1938) (governor is executive officer in every county); Miss.Code Ann. § 19–1–1 *et seq.* (1972) (defin-

ing the counties and their powers and duties); *id.* § 97–1–1 *et seq.* (state criminal code; violations of state law are often punishable by sentences in county jails).

10. For the history of the relief granted in *Gates*, see 349 F.Supp. 881 (N.D.Miss.1972), *aff'd*, 501 F.2d 1291 (5th Cir. 1974); 390 F.Supp. 482 (N.D.Miss.1975), *aff'd per curiam*, 525 F.2d 965 (5th Cir. 1976); 423 F.Supp. 732 (N.D.Miss. 1976), *aff'd*, 548 F.2d 1241 (5th Cir. 1977).

11. It is unclear from the district court's opinion whether it applied this second ground of inadequacy to all of the named plaintiffs or only to the 12 state prisoners. We assume the court applied this ground to disqualify all of the named plaintiffs, since otherwise its consideration of adequacy of representation would have erroneously ignored six of the putative representatives.

could ever be an adequate class representative. While the mooting of an individual's claim for relief is a valid consideration in determining whether he should be allowed to continue as class representative, *see Harris v. Peabody*, 611 F.2d 543, 544–45 (5th Cir.), *cert. denied*, 449 U.S. 958, 101 S.Ct. 368, 66 L.Ed.2d 224 (1980), the prospect of future release from confinement is not a valid ground for denying class certification.[12] To the contrary, this very prospect supports class certification: while any individual prisoner's claim for injunctive relief is in danger of becoming moot before the court can grant relief,[13] class certification ensures the presence of a continuing class

of plaintiffs with a live dispute against prison authorities. *See United States Parole Comm'n v. Geraghty*, 445 U.S. 388, 397, 100 S.Ct. 1202, 1209, 63 L.Ed.2d 479 (1980). If the district court believes that a prisoner's post-certification release renders him an inadequate representative, the solution is to permit his substitution by a new representative, not to dismiss the class claims.

■ The district court also erred in holding that an individual claim for damages[14] in itself disqualifies a plaintiff from representing the class in its claim for injunctive relief. An individual claim for large damages does not necessarily make a putative

12. *Cf. Gerstein v. Pugh*, 420 U.S. 103, 110 n.11, 95 S.Ct. 854, 861 n.11, 43 L.Ed.2d 54 (1975) (holding that representative pretrial detainees could continue to represent class on appeal even though there was no evidence in record that they were in custody when the district court certified the class); *Cruz v. Hauck*, 627 F.2d 710, 716–17 (5th Cir. 1980) (holding, under facts of case, that it was error to deny certification on ground that plaintiffs were no longer incarcerated in county jail). *See generally Sosna v. Iowa*, 419 U.S. 393, 403, 95 S.Ct. 553, 559, 42 L.Ed.2d 532 (1975) (determining representative's status by reference to "the time the class action is certified by the district court").

13. We express no view on the question whether the release of a prisoner will in every case moot his claim for injunctive relief. The district court apparently assumed that release always moots such a claim. The Supreme Court, however, has fashioned an exception to the mootness doctrine when a plaintiff's claim is "capable of repetition, yet evading review," and there is a possibility that the claim "may arise again with respect to that plaintiff." *United States Parole Comm'n v. Geraghty*, 445 U.S. 388, 397, 100 S.Ct. 1202, 1209, 63 L.Ed.2d 479 (1980). In *Gerstein v. Pugh*, 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975), the Court suggested in dicta that a case brought by pretrial detainees might fit within this exception, writing that it was "most unlikely that any given individual could have his constitutional claim decided on appeal before he is either released or convicted" and that "[t]he individual could . . . suffer repeated deprivations." *Id.* at 110 n.11, 95 S.Ct. at 861 n.11. While the Court in *Gerstein* held only that the *class* claims were not moot, and that the plaintiffs could continue to represent the class *on appeal* even though the record did not reveal that they were imprisoned at the time of certification, the Court's holding and reasoning would seem to bear directly on the questions of individual

mootness and adequacy of representation in cases in which all class members' individual claims for injunctive relief are transitory. If plaintiffs whose individual claims are moot at the time of certification can nevertheless represent the class on appeal, what is to happen if they win the appeal and the case is sent back for further proceedings? If no individual plaintiff's claim can last long enough to reach the certification stage, then certainly none will last throughout the litigation of the merits. Is the court to certify a new representative every time a representative is released from detention? Or is it preferable to maintain some continuity by allowing the first certified representative to press the class claims? We express no view on these questions; we only note that *Gerstein* raises them. *But see Weinstein v. Bradford*, 423 U.S. 147, 149, 96 S.Ct. 347, 349, 46 L.Ed.2d 350 (1975) (per curiam) (in individual suit by prisoner challenging parole procedures, plaintiff's claim mooted by his release in absence of "demonstrated probability" that he would again be subject to parole board's jurisdiction); *Ridley v. Hopper*, 485 F.2d 1377 (5th Cir. 1973) (per curiam) (district court's grounds for denial of class certification in *pro se* prisoner's suit not set out; plaintiff's individual claim for injunctive relief rendered moot by his transfer).

14. It is not clear from the complaint whether the $10,000,000 is demanded as classwide damages or as damages for the individual plaintiffs. The district court first seemed to treat the demand as an individual claim in concluding that the demand rendered the plaintiffs' interest antagonistic to those of the class; it then seemed to assume that there would be need to certify a class of those demanding damages. These assumptions are not necessarily in conflict; the reason for the district court's and our uncertainty concerning the nature of the damages demanded is the vagueness of plaintiffs' pleadings.

representative's interests "antagonistic" to those of the class; to the contrary, the courts have often viewed the assertion of such a claim as an indication that the representative will prosecute the action vigorously. 7 C. Wright & A. Miller, Federal Practice and Procedure § 1767, at 637–38 (1972). Of course, if the court has reason to conclude that a plaintiff has neglected or will neglect the claims for injunctive relief in his pursuit of his damage claims, it may find him an inadequate representative. But in this case, there is nothing in the record to indicate that plaintiffs' claims for damages are in any way "antagonistic" to the class claims for injunctive relief. The complaint, in fact, primarily recites allegations that are applicable to the entire class; it appears that plaintiffs' claims for damages are based on what they claim is the experience suffered by every inmate in the county jails. Moreover, the district court's conclusion that a subclass of inmates demanding damages could not be certified under subdivision (b)(3) [15] was irrelevant to the question whether plaintiffs could press their individual damage claims and still represent the (b)(2) class. Thus, the court was erroneous in relying on these grounds to conclude that plaintiffs were inadequate representatives.

### B. Common Questions of Law or Fact

■ Despite the errors in the district court's opinion, we conclude that it did not abuse its discretion in denying class certification on the ground "that the physical and environmental conditions at county jails in the state are so divergent that it is virtually impossible to state with certainty what may be common issues." 87 F.R.D. at 769.

■ Under Rule 23(a)(2), plaintiffs may bring a class action "only if . . . there are questions of law or fact common to the class." This provision does not require complete identity of legal claims among the class members. *Johnson v. American Credit Co.*, 581 F.2d 526, 532 (5th Cir. 1978). But we think that it does require that there be at least one issue [16] whose resolution will affect all or a significant number of the putative class members. As among the inmates in different county jails, we do not think that the district court abused its discretion in concluding that there were no "common questions" in this case.

■ The legal test for an Eighth Amendment challenge to the conditions of one's confinement, although imprecise, is well settled: the court must consider the "totality" of the conditions to determine whether they violate "contemporary standards of decency." [17] This test requires the court to make a detailed inquiry into all of

**15.** We express no view as to whether the district court was correct in its assumption that a subclass of those demanding damages would have to be certified under (b)(3). *Compare Bogard v. Cook*, 586 F.2d 399, 409 (5th Cir. 1978) (dictum) ("the proper classification" if classwide damages are sought in prisoners' action is (b)(3), not (b)(1) or (b)(2)), *cert. denied*, 444 U.S. 883, 100 S.Ct. 173, 62 L.Ed.2d 113 (1979), *with Parker v. Local Union No. 1466, United Steelworkers*, 642 F.2d 104, 107 (5th Cir. 1981) (damages may be granted to a class certified under (b)(2)), *and Jones v. Diamond*, 519 F.2d 1090, 1100 n.17 (5th Cir. 1975) (dictum) (prisoner's class action against single Mississippi jail) ("So long as the predominant purpose of the suit is for injunctive relief, the fact that a claim for damages is also included does not vitiate the applicability of 23(b)(2)."). *Cf. Johnson v. General Motors Corp.*, 598 F.2d 432, 437 (5th Cir. 1979) (even though Rule 23 does not require notice in a (b)(2) suit, plaintiff's claim for monetary relief will not be barred by prior (b)(2) suit in which monetary relief was

granted but in which plaintiff received no notice); 7A C. Wright & A. Miller, *supra*, § 1775, at 22–23 (arguing that a (b)(2) action should be allowed even if damage claims are made, but suggesting that such claims will commonly fall under (b)(1) or (b)(3)).

**16.** By its terms, Rule 23(a)(2) requires more than one common question. 7 C. Wright & A. Miller, *supra*, § 1763, at 604 ("All that can be derived from the rule itself is that the use of the plural 'questions' suggests that more than one issue of law or fact must be common to members of the class."). We need not decide in this case whether one common question should suffice, or, indeed, how to determine whether an issue presents "one" question or "more than one" question.

**17.** *See Rhodes v. Chapman*, 452 U.S. 337, 345–50, 101 S.Ct. 2392, 2398–400, 69 L.Ed.2d 59 (1981) (adopting "totality" test by implication) (in holding that "double-celling" is not unconstitutional, Court looks at all conditions of con-

the conditions of a prison, as well as the circumstances that have created the conditions. Plaintiffs concede that the application of this test in this case would require the district court to hold a hearing on the conditions and circumstances of each county jail in Mississippi to determine whether that jail's conditions violate the Eighth Amendment's command.[18] They point out no way

in which the resolution of this ultimate issue concerning one jail would have any effect on the resolution of the issue concerning any other jail. They have identified no practice or condition common to all the jails which would allow the district court to maintain the class action "with respect to particular issues" under Rule 23(c)(4)(A).[19]

finement); *id.* at 363, 101 S.Ct. at 2407 n.10 (Brennan, J., concurring) ("The Court today adopts the totality of the circumstances test."); *Jones v. Diamond*, 636 F.2d 1364, 1368 (5th Cir. 1981) (en banc). Of course, there are certain practices which, taken alone, constitute cruel and unusual punishment. *See Rhodes v. Chapman*, 452 U.S. at 347, 101 S.Ct. at 2399. But plaintiffs have identified no such practice common to all of the county jails. *See* note 19 *infra.*

18. Separate hearings on various issues are of course common practice in class actions. The typical case is one in which a defendant's liability to the class is determined at a single hearing, and then separate hearings are held on each class member's claim for relief. *See, e.g., International Brotherhood of Teamsters v. United States*, 431 U.S. 324, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977) (liability phase of Title VII "pattern and practice" suit), *on remand sub nom. United States Equal Opportunity Comm'n v. T.I.M.E.–D.C. Freight, Inc.*, 659 F.2d 690 (5th Cir. 1981) (remedy phase). In this case, however, 82 different hearings would have to be held in the liability phase; no hearing would decide any issue presented in another.

19. The failure to identify a common practice distinguishes this case from *Washington v. Lee*, 263 F.Supp. 327 (M.D.Ala.1966), aff'd per curiam, 390 U.S. 333, 88 S.Ct. 994, 19 L.Ed.2d 1212 (1968), on which plaintiffs place primary reliance. *Washington v. Lee* involved a challenge to a single practice—the segregation of the races in the state prisons and the county, city, and town jails in Alabama. A decision on the constitutionality of this practice in one institution would necessarily resolve the issue for all others. No similar question is presented in this case. Plaintiffs allege that many jails do not have "adequate" recreation or rehabilitation programs; but failure to provide a rehabilitation or recreation program does not, by itself, constitute cruel and unusual punishment. *McCray v. Sullivan*, 509 F.2d 1332, 1335 (5th Cir.) (rehabilitation), *cert. denied*, 423 U.S. 859, 96 S.Ct. 114, 46 L.Ed.2d 86 (1975); *Miller v. Carson*, 563 F.2d 741, 751 n.12 (5th Cir. 1977) ("deprivation of exercise per se does not violate the cruel and unusual punishment clause"). Plaintiffs' claim of denials of visitation rights require a hearing on the available facilities and the security requirements of each jail. *See*

*Jones v. Diamond*, 636 F.2d 1364, 1377 (5th Cir. 1981) (en banc). Nor is there any Eighth Amendment right to a particular system of inmate classification. *See Newman v. Alabama*, 559 F.2d 283, 287 (5th Cir. 1977), *rev'd in part on other grounds and cert. denied*, 438 U.S. 781, 915, 98 S.Ct. 3057, 3144, 57 L.Ed.2d 1114 (1978). Of course, the courts may issue orders concerning rehabilitation, recreation, visitation, and classification to remedy violations found under the "totality of the conditions" test. *See Jones v. Diamond*, 636 F.2d at 1376–78 (granting injunctive relief after rejecting trial court's findings); *Newman v. Alabama*, 559 F.2d at 291–92. But it is clear that all of the issues raised by plaintiffs will require a jail-by-jail examination of the "totality of conditions."

The question of overcrowding also requires an inquiry into all the facilities and conditions in each jail. *See Rhodes v. Chapman*, 452 U.S. at 347 51, 101 S.Ct. at 2399–401. Plaintiffs' reliance on *Hamilton v. Morial*, 644 F.2d 351 (5th Cir. 1981), in support of a consolidated approach to the overcrowding problem is misplaced: *Morial* was neither a class action nor, despite some of the language in the opinion, a consolidated action challenging overcrowding in all of Louisiana's prisons and jails. Rather, *Morial* was an appeal by the state from conflicting orders by several courts limiting the prison population of various prisons and jails. The state was faced with the prospect of finding expensive alternatives to confinement or releasing dangerous criminals. In those extraordinary circumstances, we issued a writ of supervisory mandamus transferring any pending or future action seeking an order limiting inmate population to a single court so that the overcrowding problem could be resolved "as a unified whole." *Id.* at 353. We expressly left it to the discretion of the trial judge to determine "whether all or any part of such actions shall be consolidated for hearing or disposition." *Id.* at 354. In this case, we do not have several instances of adjudicated overcrowding requiring one court to determine the remedy. Moreover, the district court's recent order redefining the class in *Gates v. Collier* will provide a unified approach to any overcrowding in the jails caused by the transfer of state prisoners. *Morial* simply has no relevance to the question whether the requirements of Rule 23 have been met in this case.

Plaintiffs contend that these problems can be dealt with by "subclassing" under Rule 23(c)(4)(B). In this case, however, we do not have "subclasses" of a class identifiable by "questions of law or fact common to the class" as those terms are used in Rule 23(a)(2); we have in reality 82 different classes that would not benefit in any perceivable way by having all of their claims resolved in a single lawsuit. A common question can be said to exist here only in the most abstract form: all of the putative class members are prisoners, and all may raise the question whether the conditions of their confinement violate a general legal standard. If we were to hold that it was an abuse of discretion for the trial court to conclude that the presentation of this abstract issue did not raise a "common" question within the meaning of Rule 23(a)(2), any allegation of a breach of legal duty by any class of defendants—no matter how vast or diverse—could be impressed into a single case.

Plaintiffs argue that the presence of all responsible state and county officials will allow the district court to impose on all of the jails uniform requirements concerning physical facilities, medical care, visiting hours, access to legal materials, disciplinary rules, staff training, and rehabilitation programs. The Eighth Amendment, however, does not require the conditions of confinement in different institutions to be uniform, nor does it license the federal judiciary to impose "what we as individuals might like to see accomplished in the way of ideal prison conditions." *Newman v. Alabama*, 559 F.2d 283, 287 (5th Cir. 1977), *rev'd in part on other grounds and cert. denied*, 438 U.S. 781, 915, 98 S.Ct. 3057, 3144, 57 L.Ed.2d 1114 (1978). What the Eighth Amendment does is forbid cruel and unusual punishment; plaintiffs must allege some common violation of this prohibition to justify a class action involving different jails, not point out that a single court could establish uniform standards if violations were found.[20]

**20.** The dissent argues that a proper apprehension of plaintiffs' allegations yields this common question justifying class certification: whether the state has an affirmative responsibility, mandated by the United States Constitution, to supervise and enforce the requirements of the Eighth and Fourteenth Amendments upon all county jails. The dissent's apprehension exceeds that of plaintiffs. While it is true that the plaintiffs have spoken of an "affirmative" duty to supervise in their appellate brief, plaintiffs themselves have never argued that the question of the state defendants' responsibility for the conditions in the various county jails is a "common question" within the meaning of Rule 23(a)(2).

The dissent's use of the term "affirmative obligation" and its quotation from *Adams v. Mathis*, 458 F.Supp. 302, 308–09 (M.D.Ala.1978), *aff'd per curiam*, 614 F.2d 42 (5th Cir. 1980), suggest that the state may have violated the Fourteenth Amendment by not properly structuring and regulating the county jail system. While plaintiffs did allege in their Second Amended Complaint that various state officials have statutory duties concerning the county jails, they made these allegations in an attempt to demonstrate that the state is ultimately responsible for the jail conditions under Mississippi law. They do not allege that the state has failed to "promulgat[e] detailed rules and regulations," make "regular" inspections or take "vigorous" enforcement action, the three "affirmative" duties that the *Adams* opinion sug-

gests are mandated by the Constitution. *See Adams v. Mathis*, 458 F.Supp. at 309. They did not attempt to advance any such breaches of duty as common questions at the certification hearing.

We note that the *Adams* case was a class action against a single county jail in Alabama. Alabama statutes and regulations imposed duties concerning the conditions in county jails on certain state officials; the court found that state officials had failed to perform many of these duties with respect to the jail involved in the suit. *See Adams*, 458 F.Supp. at 306–08. While the part of the opinion quoted by the dissent does speak in terms of constitutional duty, the court's judgment was only that it could order the state to take remedial action. This court affirmed the judgment under the familiar principle that, upon a finding of constitutional violations, a district court may order the state to take action that the Constitution would not require of its own force. *See* 614 F.2d at 43.

Finally, we note that the *Adams* opinion gives little explanation of the source of the state's "duty to supervise," and less of the standards by which federal courts can determine whether the required "rules and regulations" are "detailed" enough, whether inspections are "regular" enough, and whether enforcement is "vigorous" enough. *See Adams*, 458 F.Supp. at 309. The dissent's gloss on the *Adams'* language—that it raises the question whether the

The purposes of Rule 23 fully support the district court's conclusion. "It is undisputed that the purpose of Rule 23 is to prevent piecemeal litigation—to avoid (i) a multiplicity of suits on common claims resulting in inconsistent adjudications and (ii) the difficulties in determining the *res judicata* effects of a judgment." *Donovan v. University of Texas*, 643 F.2d 1201, 1206–07 (5th Cir. 1981). Preventing piecemeal litigation also has a third beneficial purpose—saving time and expense to the litigants and the courts. *See* 7 C. Wright & A. Miller, *supra*, § 1751, at 504.

Maintenance of a single action involving the conditions in all of the jails in Mississippi would serve none of these purposes. The district court would have to make a separate inquiry into the "totality" of conditions in each jail. There is no danger of inconsistent adjudications. The conclusion concerning the conditions in any jail would not be res judicata concerning the conditions in another jail. A single action involving every jail will not require less judicial time or energy than a separate suit for each jail; instead, it will simply require one court to make the separate inquiries that several courts could make just as efficiently and perhaps more thoroughly. Moreover, plaintiffs concede that county-by-county class actions had been brought against "at least" 20 counties prior to the institution of this action; several of the jails involved are already operating under court order. *See* 87 F.R.D. at 764 n.2. We see no reason to force the litigants or the courts in these separate suits to stand aside while plaintiffs prosecute this omnibus action, which will inevitably take years to be ready for trial, much less reach final judgment on all the jails and go through the appeals process.[21]

Plaintiffs argue that a single class action will confer significant benefit on jail inmates because the available *pro bono* legal representation in Mississippi is inadequate to maintain separate suits, while a single suit will provide all inmates with representation by the legal services organization that filed this suit. We realize that the unavailability of counsel may be a serious impediment to the vindication of the rights of every person incarcerated in a county jail. We do not see, however, how proving the case against each of 82 counties will require significantly less time or effort on the part of counsel if the separate hearings are held by separate courts or by one court; if plaintiffs' counsel does not have the resources to prove 82 separate cases, they may not have the resources to adequately represent the inmates in every one of the 82 counties in a single action. While a single action will certainly save time and expense in the pleading stages of the case, we think that the unfocused pleadings and certification inquiry that resulted in this case confer an uncertain "benefit" on the inmates in the various jails. While the unavailability of adequate legal resources is unfortunate, it is not a reason for ignoring the requirements or purposes of Rule 23.

Plaintiffs argue that, even if the district court properly refused to certify the statewide class, the court should have certified a class of inmates in the eight counties named as defendants in this case. Plaintiffs, however, did no better in establishing common questions among the eight counties named than it did among all of the county jails. Thus, the court's refusal to certify an eight-county class was not an abuse of discretion.

state officials in this case are fulfilling their constitutional duty to prevent violations by local officials—presents a theory whose viability is at odds with the Supreme Court's decision in *Rizzo v. Goode*, 423 U.S. 362, 377–80, 96 S.Ct. 598, 607 09, 46 L.Ed.2d 561 (1976). We think it wholly inappropriate to remand this case on the basis of this novel and problematic theory when the plaintiffs never raised it at all below and have articulated it on this appeal, if at all, only in the vaguest terms.

**21.** *Cf.* Rule 23(b)(3) (court should consider "the extent and nature" of prior actions brought by

members of a proposed (b)(3) class). *But cf. Johnson v. American Credit Co.*, 581 F.2d at 531 n.9 (court should not consider (b)(3) factors in determining maintainability of (b)(2) action). We do not consider these prior actions to determine that a class action is not maintainable; we simply refer to them to illustrate the disruption to the orderly vindication of jail inmates' rights that would occur if we stretched the "common question" concept to the limits plaintiffs ask in this case.

The judgment of the district court is AFFIRMED.

SAM D. JOHNSON, Circuit Judge, dissenting:

Believing that the plurality has misapprehended the essence of the plaintiffs' allegations, this dissent is respectfully submitted.

The linchpin of the inmate plaintiffs' thesis that the conditions of confinement in Mississippi's eighty-two county jails can be addressed in a single action is their contention that there exists in the state government of Mississippi ultimate authority over, and responsibility for, those aspects of detention subject to constitutional scrutiny. The plaintiffs find three sources of this central authority. The first is in the constitution itself. Citing then-district court Chief Judge Frank M. Johnson's resolution of *Adams v. Mathis*, 458 F.Supp. 302 (M.D. Ala.1978), *affirmed*, 614 F.2d 42 (5th Cir. 1980), the inmates contend that the State of Mississippi is under an affirmative obligation, mandated by the fourteenth amendment, to ensure that persons incarcerated in its political subdivisions by virtue of its state laws are not deprived their constitutional rights. They find expression of this obligation in *Adams'* statement that

> When a *state or county* takes a citizen into custody, the *state* assumes the responsibility for that individual's physical and mental health. *Newman v. State of Alabama*, 349 F.Supp. 278 (M.D.Ala.1972), *affirmed in part*, 503 F.2d 1320 (5th Cir. 1974), *cert. denied*, 421 U.S. 948, 95 S.Ct. 1680, 44 L.Ed.2d 102 (1975). . . .
>
> The appropriate state officials have the duty of supervising the acts of its agents who are authorized by state law to operate a jail in one of its political subdivisions. This constitutional duty to supervise includes three basic elements: To clearly and specifically define the scope of the authority delegated through the promulgation of detailed rules and regulations; to keep informed as to the conduct of the agents through regular and thorough inspections; and to take all ac-

tion necessary to correct the conduct of the agents operating the jails in the political subdivisions, through vigorous enforcement of the established standards and through direct assistance. *See Lee v. Macon County Board of Education*, 267 F.Supp. 458 (M.D.Ala.) (three-judge court), *affirmed sub nom. Wallace v. United States*, 389 U.S. 215, 88 S.Ct. 415, 19 L.Ed.2d 422 (1967); *Washington v. Lee*, 263 F.Supp. 327 (M.D.Ala.1966) (three-judge court), *affirmed*, 390 U.S. 333, 88 S.Ct. 994, 19 L.Ed.2d 1212 (1968).

*Id.* at 308, 309 (citations omitted) (emphasis added).

Their second source of central authority is in Mississippi's own state statutes. They point, *inter alia*, to section 7–1–5, Miss.Code Ann. (1981), which has been interpreted by the Mississippi Supreme Court to vest in the governor executive authority over every county of the state, and the power to enforce local officers' performance of their obligations if those local officers fail to act. *State v. McPhail*, 182 Miss. 360, 180 So. 387 (Miss.1938). They refer the Court to the State Fire Marshall's duty to promulgate and enforce the provision of the Mississippi Fire Prevention Code so to ensure that structures in the State of Mississippi do not pose a threat to life or health, sections 45–11–101 through 110, Miss.Code Ann. (1981), and to his duty to initiate legal proceedings to correct "hazardous inflammable conditions existing *in any building* that would tend to impair the safety of persons or property," section 45–11–3, Miss. Code Ann. (1981) (emphasis added). And they direct the Court's attention to the duties of the Chief Medical Officer and the State Board of Health[1] to prescribe sanitary regulations for public buildings, including prisons, and to enforce these regulations in the several counties through supervision of county health officers. Sections 41–3–1 *et seq.*, Miss.Code Ann. (1981).

Finally, the inmates argue that had they not been denied all discovery, they would have demonstrated that *in fact* the State of

---

1. *See* note 2, *infra*.

Mississippi exercises control over significant portions of the conditions of confinement prevailing in the state's county jails.

The district court rejected the plaintiffs' attempt to hold the state responsible for the conditions existent in its county jails. Its analysis of the issue was limited, however, to review and rejection of that part of the plaintiffs' argument based on the state statutory scheme.[2] The district court did not address at all their argument derived from the constitution, and it found that the limited evidence presented accorded with its conclusion that the county jails were autonomous entities having widely disparate conditions of confinement.

The plaintiff inmates' tripartite contention of central responsibility in the State of Mississippi for the conditions prevailing in its county jails is virtually unacknowledged in the plurality's disposition of their appeal. Despite the plaintiffs' clear exposition of these arguments in their appellate presentation, the plurality addresses only that element of the state's responsibility running to state prisoners incarcerated in county facilities. The petitioners did indeed argue that orders issued in the course of litigation challenging the conditions of confinement in state penitentiaries applied equally to state prisoners housed in county jails. But the district court's endorsement of these contentions by its subsequent extension of the extant injunctive relief to state prisoners in county jails, *Gates v. Collier*, G.C. 71–6–K (N.D.Miss. May 20, 1981), did not diminish the vitality of their concurrent contentions that these same obligations are owed to county prisoners and pre-trial detainees housed in county institutions.

The plurality does not address these remaining arguments. Indeed, it declines to address them, stating

Whether such responsibility exists by virtue of the relationship between Mississippi state and county governments, or by virtue of the Eighth Amendment, is not addressed by the 1977 statute, nor is it adequately addressed by the district court's opinion or the briefs in this court. Accordingly, we have no occasion in this case to delineate the precise extent of the state's responsibility for conditions in the county jails. *See generally Jones v. Diamond*, 594 F.2d 997, 1006–08 (5th Cir. 1979) (describing the intricate statutory scheme regulating the county jails), *vacated en banc*, 636 F.2d 1364 (5th Cir. 1981); *State v. McPhail*, 182 Miss. 360, 180 So. 387, 390 (1938) (governor is executive officer in every county); Miss.Code Ann. §§ 19–1–1 *et seq.* (1972) (defining the counties and their powers and duties); *id.* §§ 97–1–1 *et seq.* (state criminal code; violations of state law are often punishable by sentences in county jails).

At 333 n.9. There is no disagreement that the 1977 statute does not resolve the issue of state responsibility for the conditions prevailing in county jails, and that the district court's cursory examination of the plaintiffs' theory of statutorily-imposed responsibility provides a most unsatisfactory grounding for appellate consideration of this "intricate statutory scheme['s]," *id.*, allocation of responsibilities. But the issue has been squarely raised, joined, and partially treated below. It requires consideration on appeal.

Denial of this pivotal aspect of the plaintiffs' theory of liability dictated the plurality's disposition of the remainder of the case. The absence of a central responsibility and authority rendered the plurality's search for commonality among the conditions prevailing in the several county jails futile from the outset. Factual equivalency among the actual conditions of confinement in Missis-

---

2. The district court indicated that it found merit in the plaintiffs' contention that the State Board of Health bears responsibility for the sanitary conditions of the county jails through its statutory duty to supervise the county boards of health. The court, however, disregarded this indicia of state involvement with the conditions prevailing at county jails be-

cause the State Board of Health was not named as a defendant. The district court did not consider the extent, if any, to which the State Board of Health is controlled in the performance of its general obligations by either the Chief Medical Officer or the ·Governor, *see* §§ 41–3–5 and 41–3–19, Miss.Code Ann. (1981), both of whom are named defendants.

sippi's eighty-two county jails is not to be expected. It was not the ground for the plaintiffs' allegation that the conditions at the several jails raised a "common question of law or fact," Fed.R.Civ.Pro. 23(a)(2). Nor was the ground of commonality the "abstract issue" of a series of unconnected violations of a "general legal standard." At 337. Rather, the ground (at the risk of redundancy) was the charge that the state government held a central obligation, under its laws and the laws of the land, to those incarcerated in institutions of its policial subdivisions.

Conception of the case as an attempt to impress a large number of disparate and unrelated situations into a single action fed also the conclusion that the pleadings justified the district court's pretermission of discovery. The absence of recognition of plaintiffs' theory of unified obligation eliminates the need to acknowledge that the paucity of facts *regarding the responsibility in state officials,* and the plaintiffs' consequent inability to prove the existence of common questions of law or fact, may well be attributable to the district court's intradiction of *all* discovery by the plaintiffs. The plaintiffs vigorously argue that, in order to make their case of *actual* control by the state sufficient to justify holding state officials responsible for a state-wide correction of county jail conditions, it was essential for them to accumulate information on the degree of actual involvement of state officials in state policy of the conduct of county jails. Such a request should be denied only if the absence of such involvement is clearly apparent. It is not clearly apparent here.

The issues posed by the plaintiffs are not simply answered. It is also surely true that this litigation, if permitted to proceed, would not travel an easy path. The plurality is correct in the observation that the action would require examination of the conditions of confinement in all of the county facilities. But such an action would be no more unwieldy than challenges to multiple facility systems, *cf. Ruiz v. Estelle,* 503 F.Supp. 1265 (S.D.Tex.1980), *stayed in part,* 650 F.2d 555 (5th Cir. 1981); indeed, if, in the end, it is determined that a central responsibility does vest in the state, the action in its single adjudication of that responsibility and its interaction with the responsibility of county officials would be, to some degree, simpler than multiple actions challenging separately the conditions prevailing at each county jail.

This writer would remand the case of opening of discovery and for full consideration of the plaintiffs' various theories of the state's obligation for the conditions of confinement at its county jails.