**Robert E. HUTCHENS, on behalf of himself and all others similarly situated, Plaintiffs,**

v.

**PROGRESSIVE PALOVERDE INSURANCE COMPANY, et al., Defendants.**

**No. Civ.A. 5:02–0304.**

United States District Court, S.D. West Virginia, Beckley Division.

July 23, 2002.

Warren R. McGraw, II, McGraw Law Offices, Prosperity, WV, Edward S. Cook, Provost & Umphrey, Atlanta, GA, Jere L. Beasley, W. Daniel Miles, II, Clinton C. Carter, Beasley, Allen, Crow, Methvin, Portis & Miles, P.C., Montgomery, AL, for plaintiff.

James A. Varner, Catherine D. Munster, Tiffany R. Durst, McNeer, Highland, McMunn and Varner, L.C., Clarksburg, WV, for defendant Progressive Paloverde Insurance Co.

### MEMORANDUM OPINION AND ORDER

HADEN, Chief Judge.

Pending are the motions of Plaintiff Hutchens to remand and Defendant Pro-

gressive Paloverde Insurance Company ("Progressive") to dismiss this action based either on Plaintiff's lack of standing or on failure to state a claim upon which relief can be granted. Plaintiff's motion is **DENIED,** Defendant's motion to dismiss under *Rule* 12(b)(6) is **GRANTED** and its motion to dismiss for lack of standing is **DENIED** as moot.

## I. BACKGROUND

Hutchens alleges Progressive sold motor vehicle insurance policies which contained an "owned but not insured" exclusion,[1] but did not adjust the corresponding policy premium so the exclusion is "consistent with the premium charged." (Compl.¶ 14.) In effect, according to Hutchens, "Plaintiffs paid premiums for uninsured motorist coverage that was not provided." (*Id.* ¶ 19.)

Hutchens' complaint alleges fraud, suppression, breach of contract, unjust enrichment, negligence, wantonness, unfair trade practices, and bad faith. Among other damages, Plaintiff requests punitive damages as well as "any other legal or equitable relief . . . in an amount not to exceed $74,500 (seventy four thousand five hundred dollars) per Plaintiff in the individual aggregate[.]"

## II. DISCUSSION

### A. Motion to Remand

District courts have original jurisdiction of all "civil actions where the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs, and is between citizens of different States." 28 U.S.C. § 1332(a)(1). Defendants may re-

move any case of which the district courts have original jurisdiction. 28 U.S.C. § 1441(a). Removal statutes must be construed strictly against removal. *See Mulcahey v. Columbia Organic Chem. Co., Inc.,* 29 F.3d 148, 151 (4th Cir.1994). The party seeking to remove a case to federal court has the burden of establishing federal jurisdiction. *See id.* If federal jurisdiction is doubtful, a remand is necessary. *Id.*

A respected commentary states, "the [preferred] practice is to treat the amount requested by the plaintiff in the state court as the amount in controversy." 14C Wright, Miller & Cooper, *Federal Practice and Procedure: Jurisdiction 3d* § 3725 at 98 (1998). However, the treatise notes this result is fully satisfactory only in states where recovery is not limited to the amount demanded. *Id.* In West Virginia courts, a plaintiff is not bound by the *ad damnum* clause and may seek to amend it after final judgment to conform to the evidence. *See Berry v. Nationwide Mut. Fire Ins. Co.,* 181 W.Va. 168, 177, 381 S.E.2d 367, 376 (1989) ("In the final analysis it is not the amount stated in the *ad damnum* clause but the actual proof of the plaintiff's damages which will control the issue.").

This Court has previously found that a request for punitive damages, where properly recoverable, inevitably inflates a plaintiff's potential recovery. *See Chiartas v. Bavarian Motor Works, AG,* 106 F.Supp.2d 872, 874 (S.D.W.Va.2000) (citing *Weddington v. Ford Motor Credit Co.,* 59 F.Supp.2d 578, 584 (S.D.W.Va.1999)); *see also Cline v. Matney,* 20 F.Supp.2d 977, 979 (S.D.W.Va.1998). A good faith claim

---

**1.** An owned but not insured exclusion "generally excludes uninsured motorist coverage for bodily injury sustained by a person covered under the policy while occupying a motor vehicle owned by an insured or relative living in the same household, but not insured for uninsured motorist coverage under the policy." *Broadnax,* 208 W.Va. at 42, n. 17, 537 S.E.2d at 888, n. 17 (citation omitted).

for punitive damages may augment compensatory damages in determining the amount in controversy unless it can be said to a legal certainty that plaintiff cannot recover punitive damages in the action. *See White v. J.C. Penney Life Ins. Co.,* 861 F.Supp. 25, 27 (S.D.W.Va.1994) (citing *Bell v. Preferred Life Assurance Soc'y,* 320 U.S. 238, 64 S.Ct. 5, 88 L.Ed. 15 (1943)).

■ Under West Virginia law, punitive damages are recoverable in tort actions, "where gross fraud, malice, oppression, or wanton, willful, or reckless conduct or criminal indifference to civil obligations affecting the rights of others appear[.]" *Smith v. Perry,* 178 W.Va. 395, 397, 359 S.E.2d 624, 625 (1987). Hutchens' complaint alleges Defendant's conduct constitutes fraud, as well as wanton and reckless behavior. Thus, punitive damages, presumably asserted in good faith, are potentially recoverable in this action.

■ In *McCoy v. Erie Ins. Co.,* 147 F.Supp.2d 481 (S.D.W.Va.2001), this Court adopted the preponderance of the evidence standard for amount-in-controversy determinations. *Id.* at 489. The amount in controversy is determined by considering the judgment that would be entered if the plaintiff prevailed on the merits of his case as it stands at the time of removal. *Id.* (citing *Sayre v. Potts,* 32 F.Supp.2d 881, 886–87 (S.D.W.Va.1999)). The Complaint does not itemize the compensatory damages demanded, but demands $74,500 for all damages including punitives. West Virginia courts have upheld punitive damage awards substantially in excess of compensatory damages recovered. *See TXO Prod. Corp. v. Alliance Res. Corp.,* 187 W.Va. 457, 419 S.E.2d 870 (1992), *aff'd,* 509 U.S. 443, 113 S.Ct. 2711, 125 L.Ed.2d 366 (1993). On Defendant's account, it is more likely than not the amount in controversy exceeds the jurisdictional threshold of $75,000.

■ Plaintiff's affidavit, filed after Progressive removed this action, averring that he will neither seek nor accept more than $74,500 is unavailing. Under the rule adopted in *McCoy, supra,* this Court's previous honoring of these post-removal unilateral stipulations was modified to avoid unseemly conflicts between state and federal jurisdictions exercising concurrent authority:

> The better rule requires a formal, truly binding, pre-removal stipulation signed by counsel and his client explicitly limiting recovery.... The stipulation should be ·filed contemporaneously with the complaint, which also should contain the sum-certain prayer for relief.

*McCoy,* 147 F.Supp.2d at 485–86 (citing *DeAguilar v. Boeing Co.,* 47 F.3d 1404, 1412 (5th Cir.1995)). Because Hutchens' stipulation was not filed until after removal, the Court cannot accept it as determinative of the amount-in-controversy issue.

Accordingly, the Plaintiff's motion to remand is **DENIED.**

## B. Motion to Dismiss for Failure to State a Claim

Defendant moved to dismiss this action for failure to · state a claim upon which relief may be granted. Our Court of Appeals has often stated the settled standard governing the disposition of a motion to dismiss pursuant to *Rule* 12(b)(6):

> In general, a motion to dismiss for failure to state a claim should not be granted unless it appears certain that the plaintiff can prove no set of facts which would support its claim and would entitle it to relief. In considering a motion to dismiss, the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff.

*Mylan Labs., Inc. v. Matkari,* 7 F.3d 1130, 1134 (4th Cir.1993) (citations omitted); see also *Brooks v. City of Winston–Salem,* 85 F.3d 178, 181 (4th Cir.1996); *Gardner v. E.I. Dupont De Nemours and Co.,* 939 F.Supp. 471, 475 (S.D.W.Va.1996). It is through this analytical prism the Court evaluates Defendant's motion.

In *Mitchell v. Broadnax,* 208 W.Va. 36, 537 S.E.2d 882 (2000), the Supreme Court of Appeals of West Virginia held that "when an insurer incorporates, into a policy of motor vehicle insurance", an exclusion pursuant to *W.Va.Code* § 33–6–31(k) ..., the insurer must adjust the corresponding policy premium so that the exclusion is "consistent with the premium charged." *Id.* 208 W.Va. at 47, 537 S.E.2d at 893. The exclusion at issue in *Broadnax* was an owned but not insured exclusion. The gravamen of Hutchens' complaint is that Progressive sold him an automobile insurance policy with such an exclusion, but failed to adjust the premium accordingly.[2]

In 2002 the West Virginia Legislature enacted House Bill 4670, which was passed March 7, 2002 and took effect ninety days from passage, that is, June 7, 2002. W.Va.

Code § 33–6–30 (2002). The new statute was a direct response to *Broadnax:*

> It is the intent of the Legislature that the amendments in this section enacted during the regular session of two thousand two are: (1) A clarification of existing law as previously enacted by the Legislature, including, but not limited to, the provisions of subsection (k), section thirty-one of this article; and, (2) specifically intended to clarify the law and correct a misinterpretation and misapplication of the law that was expressed in the holding of the Supreme Court of Appeals of West Virginia in the case of *Mitchell v. Broadnax,* 208 W.Va. 36, 537 S.E.2d 882 (2000). These amendments are a clarification of the existing law as previously enacted by this Legislature.

W.Va.Code § 33–6–30(c). Pertinently, the statute provides that:

> certain classes of persons are seeking refunds of insurance premiums and seeking to void exclusions and other policy provisions on the basis that insurance companies allegedly failed to provide or demonstrate a reduction in the premiums charged in relation to certain

---

**2.** Progressive argues Hutchens lacks standing because his particular policy includes only the statutorily required, mandatory minimum of uninsured motorist coverage. The Supreme Court of Appeals of West Virginia previously held that an owned but not insured exclusion cannot preclude recovery of such mandatory minimum coverage. *Bell v. State Farm Auto. Ins. Co.,* 157 W.Va. 623, 207 S.E.2d 147 (1974). Thus, under *Broadnax,* Hutchens could not be entitled to a premium adjustment because the owned but not insured exclusion in his policy could not, by law, exclude any uninsured motorist coverage due him under his policy.

In the class action context, "it is essential that the named class representative demonstrate standing through a 'requisite case or controversy between themselves personally and [defendants],' not merely allege that 'inju-

ry has been suffered by other, unidentified members of the class.'" *Central Wesleyan Coll. v. W.R. Grace & Co.,* 6 F.3d 177, 188 (4th Cir.1993) (quoting *Blum v. Yaretsky,* 457 U.S. 991, 1001 n. 13, 102 S.Ct. 2777, 73 L.Ed.2d 534 (1982)). If Hutchens lacked standing, however, the simple solution would be to replace him with a class representative whose policy provided for more than the required minimum of uninsured motorist coverage. *See Bennett v. Westfall,* 640 F.Supp. 169, 170 (S.D.W.Va.1986) (citing *Stewart v. Winter,* 669 F.2d 328, 334 (5th Cir.1982)). This solution presupposes the existence of a viable class and another representative. *Id.* At this juncture, the standing issue is not dispositive of the motion to dismiss, and the Court relies instead upon Plaintiff's failure to state a claim.

terms or exclusions incorporated into policies of insurance[.]

*Id.* at (b)(3). All insurance rates and forms are approved by the state insurance commissioner, *id.* at (b)(4), a process that benefits both consumer and insurer, *id.* at (b)(1). Neither the Legislature nor the insurance commissioner "has ever required the insurer to demonstrate that there was a specific premium reduction for certain exclusions" in insurance policies. *Id.* at (b)(3). For these reasons,

> the provisions of this chapter do not provide and were not intended to provide the basis for monetary damages in the form of premium refunds or partial premium refunds when the form used and the rates charged by the insurance company have been approved by the insurance commissioner[.]

*Id.* at (b)(5). Finally, the statute provides: *Nothing in this chapter may be construed as requiring specific line item premium discounts or rate adjustments corresponding to any exclusion, condition, definition, term or limitation in any policy of insurance, including policies incorporating statutorily mandated benefits or optional benefits which as a matter of law must be offered.* Where any insurance policy form, including any endorsement thereto, has been approved by the commissioner, and the corresponding rate has been approved by the commissioner, there is a presumption that the policy forms and rate structure are in full compliance with the requirements of this chapter.

*Id.* at (c) (emphasis added).

Hutchens' claim was filed March 1, 2002. The statute's effective date is June 7, 2002. If the statute has retroactive effect, Hutchens cannot claim Progressive should have adjusted his premium to account for the owned but not insured exclusion. If the policy rate and forms were approved by the insurance commissioner, and Hutchens does not allege otherwise, the premium is correct. Under § 33–6–30, insureds have no claim for damages associated with the premium charged or the validity of the exclusion based on *Broadnax.* Similarly, claims that the insurer committed fraud in not providing a premium reduction, and thereby acted in bad faith or engaged in unfair trade practices are not available nor sustainable.

A statute that "diminishes substantive rights or augments substantive liabilities should not be applied retroactively to events completed before the effective date of the statute ... unless the statute provides explicitly for retroactive application." *Public Citizen, Inc. v. First Nat'l Bank in Fairmont,* 198 W.Va. 329, 334, 480 S.E.2d 538, 543 (1996) (citing *Mildred L.M. v. John O.F.,* 192 W.Va. 345, 351–52 n. 10, 452 S.E.2d 436, 442–43 n. 10 (1994)) (other citations omitted). More specifically this means "unless expressly stated otherwise by the statute, such a statute will not apply to pending cases or cases filed before the statute's effective date." *Id.* 198 W.Va. at 334–35, 480 S.E.2d at 543–44. The test of the interpretive principle laid down by the United States Supreme Court in *Landgraf v. USI Film Products,* 511 U.S. 244, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994) is unitary. It is whether the "new provision attaches new legal consequences to events completed before its enactment." *Id.* at 270, 114 S.Ct. 1483. "If a new procedural or remedial provision would, if applied in a pending case, attach a new legal consequence to a completed event, then it will not be applied in that case unless the Legislature has made clear its intention that it shall apply." *Public Citizen,* 198 W.Va. at 335, 480 S.E.2d at 544.

Unquestionably, § 33–6–30 is a substantive statute. The specific intent of the legislation is to prevent insureds from

making legal claims for monetary damages for insurers' failure to adjust premiums for exclusions or making claims that policy exclusions are void. *See* § 33–6–30(b)(2), (5). To the extent *Broadnax* allowed such claims, the statute disallows them.

■ The question is thus whether the Legislature intended § 33–6–30 to have retroactive effect. The Court concludes it did. Although the word "retroactive" is not used, the statute says and reiterates that these amendments are "a clarification *of existing law as previously enacted by this Legislature*." 33–6–30(c) (emphasis added). The statute is "specifically intended to clarify the law and correct a misinterpretation and misapplication of the law" expressed in *Broadnax. Id.*

In this context the term "retroactive" would have been semantically inaccurate because it would have implied that a new law had been passed that was intended to take effect earlier, i.e., retroactively. The Legislature here intended a slightly different effect: elucidating that the "existing law" has always been the same, although it appeared otherwise for a brief moment when the state Supreme Court misapplied and misinterpreted it in *Broadnax. See* W.Va.Code § 33–6–30(c) (legislative intent to "correct a misinterpretation and misapplication of the law" expressed in *Broadnax* ). These amendments clarify "the existing law" as "previously enacted by this Legislature." The specifically stated timeframe for effect of § 33–6–30 is retroactive to legislative passage of each and every item of Chapter 33, including particularly § 33–6–31(k), relied upon in *Broadnax.* While it may have appeared to ·Plaintiff here that West Virginia law allowed *Broadnax* claims, the Legislature clarified that state insurance law, existing since its passage, does *not*—and *never has*—allowed such claims.

The Court **FINDS** and **CONCLUDES** *West Virginia Code* § 33–6–30 is retroactive in effect and bars claims brought under *Mitchell v. Broadnax,* although those claims were filed prior to the effective date of the amendatory statute. Accordingly, Hutchens' claims are **DISMISSED** for failure to state a claim upon which relief can be granted, pursuant to *Rule* 12(b)(6). Fed.R.Civ.P. 12(b)(6). Progressive's motion to dismiss for lack of standing is **DENIED** as moot.

### III. CONCLUSION

Plaintiff's motion to remand is **DENIED.** Defendant's motion to dismiss for lack of standing is **DENIED** as moot. Defendant's motion to dismiss for failure to state a claim pursuant to *Rule* 12(b)(6) is **GRANTED** and this action is **DISMISSED** and stricken from the docket.

The Clerk is directed to send a copy of this Memorandum Opinion and Order to counsel of record and publish it on the Court's website at http://www.wvsd.uscourts.gov.